UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IAN CLAIRE MACDOWELL,<br><br>Plaintiff,<br><br>v.<br><br>KILOLO KIJAKAZI, Acting Commissioner of Social Security,<br><br>Defendant. | No. 2:21-cv-00729 AC<br><br><br>**ORDER** |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner"), denying his application for disability insurance benefits ("DIB") under Title II of the Social Security Act ("the Act"), 42 U.S.C. §§ 401-34.[1] For the reasons that follow, plaintiff's motion for summary judgment is GRANTED, and defendant's cross-motion for summary judgment is DENIED.

I. PROCEDURAL BACKGROUND

Plaintiff applied for DIB on August 15, 2017. Administrative Record ("AR") 104.[2] The disability onset date was alleged to be April 1, 2015. AR 210. The application was disapproved initially and on reconsideration. AR 122, 129. On May 15, 2019, ALJ Carol A. Eckersen

---

[1] DIB is paid to disabled persons who have contributed to the Disability Insurance Program, and who suffer from a mental or physical disability. 42 U.S.C. § 423(a)(1); Bowen v. City of New York, 476 U.S. 467, 470 (1986).
[2] The AR is electronically filed at ECF No. 13-1.

1

presided over the hearing on plaintiff's challenge to the disapprovals. AR 689-697 (transcript). Plaintiff, who appeared with his counsel Donald E. Bartholomew, was present at the hearing. AR 689. Charles F. Kivowitz, a Medical Expert, and Bonnie J. Drumwright, a Vocational Expert ("VE"), also testified at the hearing. Id.

On June 8, 2018, the ALJ found plaintiff "not disabled" under Sections 216(i) and 223(d) of Title II of the Act, 42 U.S.C. §§ 416(i), 423(d). AR 638-652 (decision), 654-657 (exhibit list). On August 3, 2018, the Appeals Council denied a request for review, leaving the ALJ's decision final. AR 658. The decision was appealed to the U.S. District Court on January 9, 2019, but the parties stipulated to remand the case to the ALJ for a new hearing and decision at which the ALJ would reevaluate the medical opinions, prior administrative medical findings, evidence from nonmedical sources, and decisions from other governmental agencies. AR 678. Per the stipulated remand, the Appeals Council sent the case back to the ALJ on August 16, 2020. AR 682-683. ALJ Eckersen held a second hearing on December 3, 2020. AR 581-637. Plaintiff was again present with counsel Donald Bartholomew, and VE Gail Maron also testified. AR 581. The ALJ issued an unfavorable decision on February 18, 2021. AR 560-574 (decision), 575-580 (exhibit list).

Plaintiff filed this action on April 23, 2021. ECF No. 1; see 42 U.S.C. § 405(g). The parties consented to the jurisdiction of the magistrate judge. ECF No. 11. The parties' cross-motions for summary judgment, based upon the Administrative Record filed by the Commissioner, have been fully briefed. ECF Nos. 16 (plaintiff's summary judgment motion), 24 (Commissioner's summary judgment motion). Plaintiff did not file a reply brief.

## II. FACTUAL BACKGROUND

Plaintiff was born in 1989, and accordingly was, at age 26, a younger person under the regulations, at the time of disability onset date.[3] AR 210. Plaintiff has at least a high school education, and can communicate in English. AR 115. Plaintiff has prior work experience in military service for the US Army (2009-2012), and sales/service work for car dealerships (2013-2015). AR 239.

---

[3] See 20 C.F.R. § 404.1563(c) ("younger person").

2

III.  LEGAL STANDARDS

The Commissioner's decision that a claimant is not disabled will be upheld "if it is supported by substantial evidence and if the Commissioner applied the correct legal standards." Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1011 (9th Cir. 2003).  "'The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive . . ..'" Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995) (quoting 42 U.S.C. § 405(g)).

Substantial evidence is "more than a mere scintilla," but "may be less than a preponderance." Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012).  "It means such evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal quotation marks omitted).  "While inferences from the record can constitute substantial evidence, only those 'reasonably drawn from the record' will suffice." Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006) (citation omitted). Although this court cannot substitute its discretion for that of the Commissioner, the court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." Desrosiers v. Secretary of HHS, 846 F.2d 573, 576 (9th Cir. 1988); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985) ("The court must consider both evidence that supports and evidence that detracts from the ALJ's conclusion; it may not affirm simply by isolating a specific quantum of supporting evidence.").

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001).  "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002).  However, the court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007); Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003) ("It was error for the district court to affirm the ALJ's credibility decision based on evidence that the ALJ did not discuss").

////

The court will not reverse the Commissioner's decision if it is based on harmless error, which exists only when it is "clear from the record that an ALJ's error was 'inconsequential to the ultimate nondisability determination.'" Robbins v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th Cir. 2006) (quoting Stout v. Commissioner, 454 F.3d 1050, 1055 (9th Cir. 2006)); see also Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).

## IV.  RELEVANT LAW

Disability Insurance Benefits and Supplemental Security Income are available for every eligible individual who is "disabled." 42 U.S.C. §§ 402(d)(1)(B)(ii) (DIB), 1381a (SSI). Plaintiff is "disabled" if she is "'unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment . . ..'" Bowen v. Yuckert, 482 U.S. 137, 140 (1987) (quoting identically worded provisions of 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A)).

The Commissioner uses a five-step sequential evaluation process to determine whether an applicant is disabled and entitled to benefits. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); Barnhart v. Thomas, 540 U.S. 20, 24-25 (2003) (setting forth the "five-step sequential evaluation process to determine disability" under Title II and Title XVI). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.

20 C.F.R. § 404.1520(a)(4)(i), (b).

> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, the claimant is not disabled.

Id. §§ 404.1520(a)(4)(ii), (c).

> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is disabled. If not, proceed to step four.

Id. §§ 404.1520(a)(4)(iii), (d).

> Step four: Does the claimant's residual functional capacity make him capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.

Id. §§ 404.1520(a)(4)(iv), (e), (f).

4

>Step five: Does the claimant have the residual functional capacity perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Id. §§ 404.1520(a)(4)(v), (g).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  20 C.F.R. §§ 404.1512(a) ("In general, you have to prove to us that you are blind or disabled"), 416.912(a) (same); Bowen, 482 U.S. at 146 n.5.  However, "[a]t the fifth step of the sequential analysis, the burden shifts to the Commissioner to demonstrate that the claimant is not disabled and can engage in work that exists in significant numbers in the national economy." Hill v. Astrue, 698 F.3d 1153, 1161 (9th Cir. 2012); Bowen, 482 U.S. at 146 n.5.

## V.  THE ALJ's DECISION

In the most recent decision, the ALJ made the following findings:

>1. The claimant last met the insured status requirements of the Social Security Act on December 31, 2020.
>
>2. [Step 1] The claimant has not engaged in substantial gainful activity since April 1, 2015, the alleged onset date (20 CFR 404.1571 *et seq.*).
>
>3. [Step 2] The claimant has the following severe impairments: polysubstance dependance; post-traumatic stress disorder; panic disorder; and schizophrenia (20 CFR 404.1520(c)).
>
>4. [Step 3] Including the claimant's substance use, the severity of claimant's impairments met the criteria of sections 12.03, 12.06, and 12.15 of 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d)).
>
>5. [Step 3, cont'd] In the absence of substance sue, the remaining limitations would cause more than a minimal impact on the claimant's ability to perform basic work activities; therefore, the claimant would continue to have a severe impairment or combination of impairments.
>
>6. [Step 3, cont'd] If the claimant stopped the substance use, the claimant would not have an impairment or combination of impairments that meets or medically equals any of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d)).
>
>7. [Residual Functional Capacity ("RFC")] After careful consideration of the entire record, I find that, if the claimant stopped the substance use, the claimant would have the residual functional capacity to medium work as defined in 20 CFR 404.1567(c) except he requires simple repetitive tasks; he can sustain attention,

concentration, persistence, and pace for simple repetitive tasks or entry level work; he can frequently work in proximity to the public and co-workers but only occasional, brief, superficial interaction.

8. [Step 4] The claimant is still unable to perform past relevant work (20 CFR 404.1565).

9. [Step 5] The claimant has at least a high school education. (20 CFR 404.1564).

10. [Step 5, continued] Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

11. [Step 5, continued] If the claimant stopped the substance use, considering the claimant's age, education, work experience, and residual functional capacity, there have been a significant number of jobs in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a).

12. The substance use disorder is a contributing factor material to the determination of disability because the claimant would not be disabled if he stopped the substance use (20 CFR 404.1520(g) and 404.1535). Because the substance use disorder is a contributing factor material to the determination of disability, the claimant has not been disabled within the meaning of the Social Security Act at any time from the alleged onset date through the date of this decision.

AR 563-573. As noted, the ALJ concluded that plaintiff was "not disabled" under Title II of the Act. AR 573.

## VI. ANALYSIS

Plaintiff alleges that the ALJ erred by: (1) failing to develop the record by getting updated medical opinions and having an expert "fill holes" in the Veteran's Affairs ("VA") records; (2) "cherry picking" evidence; (3) failing to find plaintiff's migraines and acne "severe" impairments at step two; (4) providing an inadequate Paragraph C assessment at step three; (5) improperly considering the medical opinions; (6) mishandling VA determinations; (7) improperly arriving at the materiality finding regarding plaintiff's substance abuse; (8) improperly discrediting plaintiff's subjective testimony; (9) improperly discrediting lay witness testimony; and (10)

////

////

////

6

finding an RFC that fails to consider all limitations established in the record. ECF No. 16 at 12-31.[4]

### A. The Record Did Not Require Further Development

Contrary to plaintiff's assertion, there was no need for the ALJ to further develop the record in this case. "An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Secretary may require." 42 U.S.C. § 423(d)(5)(A). "It is not unreasonable to require the claimant, who is in a better position to provide information about his own medical condition, to do so." Bowen v. Yuckert, 482 U.S. 137, 146, n.5 (1987). The ALJ's duty to develop the record further "is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." Mayes v. Massanari, 276 F.3d 453, 459-60 (9th Cir. 2001).

The court does not find that the ALJ needed to develop the record to address ambiguous evidence. ECF No. 16 at 14. Additional expert testimony was optional, but not required, per the terms of the stipulated remand issued at the District Court level and by the terms of the Appeals Council in implementing the remand (AR 679 ("[i]f necessary"), 685 (same)). The record before the ALJ at the second hearing contained one additional exhibit, inclusive of 154 pages of general medical evidence from the VA. AR 811-964. Plaintiff argues that these new records consisted of unanalyzed medical evidence with psychiatric records free of substance use but not free of abnormalities on examination, citing three pages of record in which the plaintiff denied current substance abuse but presented with psychiatric problems. AR 872, 844-845. However, it is not apparent that these records presented the need for further expert testimony. "ALJs are, at some level, capable of independently reviewing and forming conclusions about medical evidence to discharge their statutory duty to determine whether a claimant is disabled and cannot work." Farlow v. Kijakazi, 53 F.4th 485, 488 (9th Cir. 2022).

////

---

[4] Counsel for plaintiff improperly submitted an overlength brief without permission from the court. Though the court will consider the brief in full on this occasion, counsel for plaintiff is cautioned that the court may not be so generous if future overlength briefs are submitted.

Plaintiff has failed to demonstrate error here; there were no "obvious holes in the VA records" that the ALJ was required to remedy. ECF No. 16 at 15. The Commissioner was under no obligation to affirmatively search for reasoning behind the VA's disability ratings, or for a final determination of the VA, as explained above. Indeed, plaintiff's attorney at the December 2020 hearing affirmed that he "believe[d] [the record] to be complete," which forecloses his conjecture that there may be other records. Smith v. Saul, No. 1:19-cv-01085-SKO, 2020 WL 6305830, at *7 (E.D. Cal. Oct. 28, 2020) (plaintiff forfeited allegation that record was not complete by affirming otherwise to ALJ). Appropriate records were sought and received. AR 93-96, 109, 586. There is no error here.

B. The ALJ Did Not "Cherry Pick" Evidence

Plaintiff asserts that the ALJ improperly cherry-picked evidence to reach a predetermined result, citing five disconnected examples from the record in which the plaintiff believes that the ALJ selectively cited evidence. Plaintiff cites Attmore v. Colvin for the proposition that an ALJ cannot "cherry pick" evidence; the opinion states that "[a]n ALJ cannot simply 'pick out a few isolated instances of improvement over a period of months or years' but must interpret "reports of 'improvement' . . . with an understanding of the patient's overall well-being and the nature of her symptoms." 827 F.3d 872, 877 (9th Cir. 2016). Plaintiff also relies on Reddick v. Chater, which holds in relevant part that an ALJ may not use as an evidentiary basis an interpretation of the record that does not account for the context of materials and does not fairly represent the record as a whole. 157 F.3d 715, 723 (9th Cir. 1998). Plaintiff's "[f]ive brief examples" do not illustrate reversable error. Each example is unrelated to the next and offers an alternate interpretation of evidence, but there is no identifiable pattern of cherry-picked evidence selected to reach a particular foregone conclusion. The court is not persuaded by this cursory argument.

C. The ALJ Did Not Err at Step Two

Plaintiff argues that the ALJ erred by not identifying plaintiff's alleged migraine and acne impairments as severe at step two. "The step-two inquiry is a de minimis screening device to dispose of groundless claims." Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996). The purpose is to identify claimants whose medical impairment is so slight that it is unlikely they

8

would be disabled even if age, education, and experience were considered. Bowen v. Yuckert, 482 U.S. 137, 153 (1987). At step two of the sequential evaluation, the ALJ determines which of claimant's alleged impairments are "severe" within the meaning of 20 C.F.R. § 404.1520(c). "An impairment is not severe if it is merely 'a slight abnormality (or combination of slight abnormalities) that has no more than a minimal effect on the ability to do basic work activities.'" Webb v. Barnhart, 433 F.3d 683, 686 (9th Cir. 2005) (quoting Social Security Ruling ("SSR") 96-3p, 1996 SSR LEXIS 10 (1996)). The step two severity determination is "merely a threshold determination of whether the claimant is able to perform his past work. Thus, a finding that a claimant is severe at step two only raises a prima facie case of a disability." Hoopai v. Astrue, 499 F.3d 1071, 1076 (9th Cir. 2007).

Here, the ALJ did not dispose of plaintiff's disability claim as groundless at step two. AR 563-564. Indeed, the ALJ found that plaintiff satisfied the severity requirement, and went on to conduct the disability analysis. In doing so she was required to evaluate all functional limitations established by the reliable evidence, not just the ones identified as severe. See 20 C.F.R. § 404.1545(a)(2). To the extent she did not do this, it goes to error at step four (discussed below). Plaintiff's assertion that certain other impairments were also "severe" does not provide grounds for reversal at step two. Once the ALJ determined the existence of a severe impairment or combination of impairments, the ALJ is required to consider all the functional limitations established by the reliable medical evidence, regardless of severity, at step four. Accordingly, any error at step two not has affected the ultimately disability determination, and therefore would be harmless as a matter of law.

D. The ALJ Did Not Err at Step Three (Paragraph C Criteria)

Plaintiff argues that the ALJ erred at step three by insinuating that hospitalizations were required to meet Paragraph C criteria for mental health disorders. Plaintiff bases this argument on this statement by the ALJ: "While the claimant did have a series of mental health hospitalizations, these were concentrated in a three-month period in 2015, prior to the cessation of substance use, and the claimant did have improvement on medication sufficient to be discharged. (Exhibit 8F). Since that time, the claimant has only had routine medication management without additional

9

hospitalizations and or periods of decompensation. (Exhibit 9F)." ECF No. 16 at 19; AR 569.

At step three of the sequential evaluation process, the ALJ must consider whether one or more of a claimant's alleged impairments meets or equals an impairment listed in Appendix 1 to Subpart P of the regulations. 20 C.F.R. § 404.1520(a)(4)(iii). The Listings set forth the "symptoms, signs, and laboratory findings" which must be established for a claimant's impairment to meet the Listing. Tackett v. Apfel, 180 F.3d 1094, 1099 (9th Cir. 1999) (citation omitted). If a claimant meets or equals a Listing, the claimant is considered disabled without further inquiry. See 20 C.F.R. § 416.920(d). The burden of proof is on the claimant to establish that he meets or equals any of the impairments in the Listings. See Tackett, 180 F.3d at 1098.

Here, the court disagrees with plaintiff's reading of the ALJ's decision. The ALJ's language does not indicate that she read a hospitalization requirement into the Listings. Instead, her statement indicates that she has interpreted the evidence to show that plaintiff's condition was only so severe as to meet the Listings prior to his discontinuation of substance abuse. The court finds no error here.

### E. The ALJ Improperly Evaluated the Medical Opinions

Plaintiff asserts that the ALJ erred by not articulating the supportability of the medical opinions and by failing to address persuasiveness factors where credited medical opinions were in opposition to one another. ECF No. 16 at 21-22. The court agrees.

#### a. Summary of the Relevant Medical Evidence

##### i. Dr. Ju & Dr. Comrie

State Agency reviewing physician Dr. Winnifred C. Ju signed an evaluation based on a review of the medical record dated October 2, 2017. AR 97-103. Dr. Ju found plaintiff moderately limited in his ability to carry out detailed instructions, maintain attention and concentration for extended periods, work in coordination with or in proximity to others without distraction, interact appropriately with the general public, and get along with coworkers or peers without distracting them or exhibiting behavioral extremes. AR 99-101. Plaintiff was also moderately limited such that he is unable to carry out detailed/complex tasks on a consistent basis, and can work with others but not engage in extensive teamwork. AR 100. Plaintiff was

otherwise not significantly limited. AR 97-103. Dr. Ju found there was "no evidence of any substance abuse/disorder/DAA issue." AR 102.

State Agency reviewing physician Dr. Matthew Comrie provided a second opinion dated November 15, 2017. AR 110-116. The assessed limitations reflect those identified in Dr. Ju's opinion. Id. Dr. Comrie also found that there was "no evidence of any substance abuse/ disorder/ DAA issue." AR 115.

### ii. Dr. Kivowitz

Dr. Julian F. Kivowitz is a medical expert who testified during the May 5, 2018 hearing at the behest of the Commissioner. AR 59-65. Dr. Kivowitz testified that plaintiff's "[s]ubstance abuse is really quite well documented" and that plaintiff meets Listings 12.15 (trauma and stress-related disorders), 12.06 (anxiety and obsessive-compulsive disorder), 12.03 (schizophrenia spectrum and psychotic disorders) with substance abuse, but opined "I don't think he would meet it afterwards and that's based mainly on training and experience." AR 60-61.

### b. Principles Guiding Incorporation of Medical Evidence into an RFC

Because plaintiff applied for benefits after March 27, 2017, the ALJ applied a new set of regulations for evaluating medical evidence that differs substantially from prior regulations. For applications filed on or after March 27, 2017, the new regulations eliminate any semblance of a hierarchy of medical opinions and state that the agency does not defer to any medical opinions, even those from treating sources. 20 C.F.R. § 404.1520c(a) (2017). They also eliminate the agency's "treating source rule," which gave special deference to certain opinions from treating sources. 82 Fed. Reg. at 5853. The new regulations require an ALJ to explain how he or she considered the factors of supportability and consistency, which are the two most important factors in determining the persuasiveness of a medical opinion. 20 C.F.R. § 404.1520c(b)(2). The new regulations are not clarifications of prior regulations, but instead reflect important changes from the prior regulatory scheme (including prior case law developed under old schemes).

"[T]he ALJ is responsible for translating and incorporating clinical findings into a succinct RFC." Rounds v. Comm'r Soc. Sec. Admin., 807 F.3d 996, 1006 (9th Cir. 2015). Though the ALJ "need not discuss all evidence presented," the ALJ "must explain why

11

significant probative evidence has been rejected." Vincent on Behalf of Vincent v. Heckler, 739 F.2d 1393, 1395 (9th Cir. 1984) (internal citation and emphasis omitted). "Where an ALJ accords substantial or great weight to a physician's opinion, he must either incorporate their findings into the RFC or offer an explanation for why he chose not to accept them." Sahyoun v. Saul, No. 2:18-CV-576-EFB, 2020 WL 1492661, at *3 (E.D. Cal. Mar. 27, 2020). The ALJ is required to articulate why she considered one opinion more persuasive than another when they are equally supported and consistent with the record on a particular issue. 20 C.F.R. § 404.1520c(b)(3).

### c. The ALJ Failed to Address the Conflict in Accepted Medical Opinions

The ALJ found that Dr. Ju and Dr. Comrie's "opinions are supported by the mental status exam findings and are consistent with subsequent treatment." AR 572. She also found that Dr. Kivowitz's opinion that "the claimant can perform simple repetitive tasks is persuasive since this is supported by the objective findings reviewed, which are consistent with ongoing treatment that does not document significant deficits in memory, attention, or concentration [but the opinion that the] claimant would be limited occasional supervisor contact is not persuasive since it is not supported by evidence showing the claimant's anxiety is worsened by crowds or mental status examinations documenting that the claimant is generally cooperative." AR 572. Notably, the ALJ did not consider or even address the fact that the medical opinions differed significantly on the issue of substance abuse; a critical error in light of the fact that the ALJ determined that with substance abuse plaintiff met the Listings, and without substance abuse, he did not. The result is an unsupported conclusion on disability. Here, the ALJ did not make any finding as to supportability and consistency on the issue of substance abuse with respect to any of the medical opinions, and she failed to reconcile the conflicting findings on the issue where the medical opinions were all otherwise largely credited. This was error.

### F. The ALJ Properly Considered Plaintiff's VA Rating

Plaintiff argues that the ALJ erred by failing to properly consider plaintiff's VA disability rating. ECF No. 16 at 23. For claims filed after March 27, 2017, such as this one, the regulations instruct that "we will not provide any analysis . . . about a decision made by any other governmental agency or a nongovernmental entity about whether you are disabled, blind,

employable, or entitled to any benefits." 20 C.F.R. § 404.1504. Further, decisions by other governmental agencies are neither valuable nor persuasive, so an adjudicator will not analyze how this evidence is considered. 20 C.F.R. § 404.1520b(c)(1). Indeed, the Appeals Council explained this rule revision on remand prior to the second ALJ hearing. AR 685. The Commissioner's revised regulations displace McCartey v. Massanari, 298 F.3d 1072, 1076 (9th Cir. 2002), the case relied upon by plaintiff. There is no error here.

G. The ALJ Made an Improper Materiality Finding Re: Substance Abuse

Plaintiff argues that the ALJ improperly found plaintiff's substance abuse material to the disability finding based on the improperly solicited opinion of Dr. Kivowitz, and that the finding is not supported by substantial evidence. ECF No. 16 at 24-25. The court agrees. "An individual shall not be considered to be disabled . . . if alcoholism or drug addiction would . . . be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. § 423(d)(2)(C); see 20 C.F.R. § 404.1535(a) ("If we find that you are disabled and have medical evidence of your drug addiction or alcoholism, we must determine whether your drug addiction or alcoholism is a contributing material factor relevant to the determination of disability."). If a claimant is found disabled in claims where drug or alcohol use are implicated, then the adjudicator must "determin[e] which of the claimant's disabling impairments would remain if the claimant stopped using drugs or alcohol." Parra v. Astrue, 481 F.3d 742, 747 (9th Cir. 2007). Per a Policy Interpretation Ruling of the Social Security Administration, "The finding about materiality is an opinion on an issue reserved to the Commissioner under 20 CFR §§ 404.1527(e) and 416.927(e). Therefore, we will not ask a treating source, a CE provider, a medical expert, or any other source for an opinion about whether DAA is material. We will instead ask for medical opinions about the nature, severity, and functional effects of a claimant's impairment(s)." SSR 13-2p, n. 19. Here, the ALJ expressly asked medical expert Dr. Kivowitz to provide a materiality determination, and she relied on his testimony in making her materiality determination. AR 62, 568. This was error, particularly because plaintiff's disability determination turned entirely on the materiality of substance abuse.

////

H. <u>The ALJ Properly Discredited Plaintiff's Subjective Testimony</u>

Plaintiff argues that the ALJ's rejection of his testimony was insufficiently specific because it failed to explain what portions were being accepted and what portions were being disregarded. ECF No. 16 at 26. Plaintiff also argues that the two generic reasons the ALJ listed for discrediting plaintiff (failure to seek mental health treatment beyond medication and inconsistency with the medical record) are insufficient. <u>Id.</u> The court disagrees.

Evaluating the credibility of a plaintiff's subjective testimony is a two-step process. First, the ALJ must "determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. . . . In this analysis, the claimant is not required to show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." <u>Garrison v. Colvin</u>, 759 F.3d 995, 1014 (9th Cir. 2014) (internal citations omitted). Objective medical evidence of the pain or fatigue itself is not required. <u>Id.</u> (internal citations omitted). Second, if the ALJ does not find evidence of malingering, the ALJ may only reject the claimant's testimony by offering "specific, clear and convincing reasons for doing so." <u>Id.</u> (internal citations omitted).

Here, the ALJ's discussion of inconsistencies with the record and the minimal treatment history was quite specific. AR 571-572. The ALJ noted that plaintiff had regular appointments later in 2020 the notes of which contrasted with his testimony regarding the ongoing severity of his conditions. <u>See</u> AR 831 ("very pleasant" in October 2020), 841 (working part time in August 2020), 846 (mental status, alert and oriented, clear speech in August 2020), 849 (same), 852 (August 2020: "Vet reported doing "OK" considering COVID situation . . . alert and oriented x3 . . . seemed pleasant during visit . . . denied [suicidal or homicidal] ideation"), 854 ("very pleasant 30 yo male presented for annual visit"), 863 (0 score on depression and suicide screenings in July 2020). Such examples satisfy the ALJ's obligation. <u>See</u> <u>Smartt v. Kijakazi</u>, 53 F.4th 489, 499 (9th Cir. 2022) ("the ALJ cited specific, clear, and convincing examples across a multi-year period contrasting Smartt's subjective pain testimony with objective medical evidence"). Additionally, the ALJ discussed plaintiff's treatment history. AR 571. <u>See</u> 20 C.F.R. §

14

404.152929(a) (ALJ may consider "all of the available evidence," including a claimant's "medical history"), (c)(3)(iv), (v) (medication and treatment considered); Wellington v. Berryhill, 878 F.3d 867, 876 (9th Cir. 2017) (ALJ may weigh medical evidence inconsistencies as undercutting subjective testimony). The ALJ discussed relevant, specific evidence that supported her finding that plaintiff's testimony "is not entirely consistent with his history of mental health treatment since he stopped substance abuse in May 2016." AR 571. There is no error here.

### I. The ALJ Properly Discredited Lay Witness Testimony

Plaintiff makes a legal challenge to the Commissioner's revised regulations that specify the ALJ is not required to articulate reasons for rejecting lay witness statements for claims after March 27, 2017. ECF No. 16 at 27-29. Plaintiff argues that caselaw from this district applying the new regulations is incorrect, and notes that the Ninth Circuit has not yet addressed this specific issue. Id. Per the new regulations, the ALJ may, but is "not required to articulate how we considered evidence from nonmedical sources using the requirements in paragraphs (a)-(c) in this section." 20 C.F.R. § 404.1520c(d) (emphasis added); Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5,844, 5,850 (Jan. 18, 2017) ("Depending on the unique evidence in each claim, it may be appropriate for an adjudicator to provide written analysis. . . ") (emphasis added). Plaintiff himself cites multiple cases from this district that have applied the new regulations as to lay witness testimony. Dubord v. Comm'r of Soc. Sec., No. 2:20-cv-634-KJM-KJN, at *3 (E.D. Cal. June 2, 2021) ("these new regulations plainly allow for the ALJ to resolve plaintiff's case without articulating findings [on] plaintiff's sister's statement"); Moreno v. Kijakazi, 1:20-cv-01503-SKO, at *23 (E.D. Cal. July 21, 2022) ("Under the revised regulations, the ALJ is not required to articulate how he considered Ms. Cantu's testimony."). This court has otherwise given effect to the 2017 rule changes, and the undersigned sees no reason to deviate here. There is no error.

### J. The ALJ Improperly Established the RFC

Plaintiff argues the ALJ erred by formulating the RFC with no reference to plaintiff's non-severe impairments, including migraines, insomnia, startle response, and acneiform lesions. ECF No. 16 at 31. The court agrees. The ALJ must consider all impairments, severe and nonsevere,

when assessing RFC. 20 C.F.R. § 404.1545(a)(1), (2); Reddick v. Chater, 157 F.3d 715, 724 (9th Cir.1998). Though the ALJ made scattered references to both and migraines and acne at step two (AR 564) and referenced insomnia when discussing the listings (AR 565), she did not clearly consider the impact of any of these conditions in the RFC determination. Nor did the ALJ address plaintiff's allegation of startle response. AR 569-572. The impact of nonsevere impairments needed to be addressed with respect to the RFC. This was error.

K. Remand is the Appropriate Remedy

The undersigned agrees with plaintiff that the ALJ's error is harmful and remand for further proceedings by the Commissioner is necessary. An error is harmful when it has some consequence on the ultimate non-disability determination. Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1055 (9th Cir. 2006). The ALJ's error in this matter was harmful: the ALJ erred in assessing the medical testimony, in making a materiality determination with respect to drug and alcohol abuse, and in failing to consider all impairments in formulating the RFC. Properly addressing these topics may very well result in a more restrictive residual functional capacity assessment, which may in turn alter the finding of non-disability.

It is for the ALJ to determine in the first instance whether plaintiff has severe impairments and, ultimately, whether she is disabled under the Act. See Marsh v. Colvin, 792 F.3d 1170, 1173 (9th Cir. 2015) ("the decision on disability rests with the ALJ and the Commissioner of the Social Security Administration in the first instance, not with a district court"). "Remand for further administrative proceedings is appropriate if enhancement of the record would be useful." Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004). Here, further development of the record consistent with this order is necessary, and remand for further proceedings is the appropriate remedy.

**VII. Conclusion**

For the reasons set forth above, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 15), is GRANTED;

2. The Commissioner's cross-motion for summary judgment (ECF No. 24), is DENIED;

////

3. This matter is REMANDED to the Commissioner for further consideration consistent with this order; and

4. The Clerk of the Court shall enter judgment for plaintiff, and close this case.

DATED: March 22, 2023

_____
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE